RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DEWAINE POINDEXTER,

    *Petitioner-Appellee/*
    *Cross-Appellant,*

    *v.*

BETTY MITCHELL, Warden,

    *Respondent-Appellant/*
    *Cross-Appellee.*

Nos. 01-3250/3300

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 94-00178—Sandra S. Beckwith, Chief District Judge.

Argued: April 28, 2005

Decided and Filed: July 24, 2006

Before: BOGGS, Chief Judge; SUHRHEINRICH and DAUGHTREY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Charles L. Wille, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellant. Jennifer M. Kinsley, SIRKIN, PINALES & SCHWARTZ, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Charles L. Wille, Heather L. Gosselin, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellant. Jennifer M. Kinsley, H. Louis Sirkin, SIRKIN, PINALES & SCHWARTZ, Cincinnati, Ohio, Gary Russell Lewis, GARY R. LEWIS COMPANY, Cincinnati, Ohio, for Appellee.

    SUHRHEINRICH, J., delivered the opinion of the court. BOGGS, C. J. (pp. 20-21), delivered a separate concurring opinion, in which SUHRHEINRICH, J., joined, with SUHRHEINRICH, J. (p. 22), and DAUGHTREY, J. (p. 23), also delivering separate concurring opinions.

---

## OPINION

---

    SUHRHEINRICH, Circuit Judge. In this death penalty case, Respondent Betty Mitchell, Warden, appeals the district court's grant of habeas corpus under 28 U.S.C. § 2254 on the grounds that Petitioner Dewaine Poindexter received constitutionally ineffective assistance of counsel during the guilt and penalty phases of his capital trial. Poindexter cross-appeals the district court's denial

1

of his § 2254 petition based upon his remaining grounds for relief.  Although we disagree with the district court's conclusion that Poindexter was deprived of his right to counsel during the guilt phase, we agree with the conclusion that Poindexter received ineffective assistance during the sentencing phase.  For the following reasons, we REVERSE the district court's conditional grant of the writ in part and AFFIRM in part.

## I. Background

The facts of this case are excerpted from *State v. Poindexter*, 520 N.E.2d 568, 569-70 (Ohio 1988):

> During February 1985, Dewaine Poindexter, appellant herein, was serving a sentence in the workhouse (Community Correctional Institution) for felonious assault on his former girlfriend and the mother of his two children, Tracy Abernathy. On February 11 or 12, 1985, appellant confided in a fellow inmate that Abernathy was " * * * going with some other guy," and that appellant was going to kill the man.

> On February 15, 1985, appellant was released from prison.  On February 19, 1985, at approximately 10:30 a.m., Abernathy, Kevin Flanaghan and Abernathy's son, Michael, were asleep on the second floor of Abernathy's townhouse apartment in Cincinnati, Ohio.  They were awakened by the crash of breaking glass.  As Abernathy and Flanaghan started to investigate the noise, they were confronted by an armed man, appellant, as they reached the top of the steps.  Appellant ordered Abernathy and Flanaghan back into the bedroom and asked Flanaghan to identify himself.  Just as Flanaghan stated that his name was Kevin, appellant, who was aiming a revolver at Flanaghan's chest, pulled the trigger.  The weapon misfired, emitting only a clicking noise.  Thereupon, appellant aimed the weapon and pulled the trigger a second time.  This time the weapon fired, striking Flanaghan in the chest and knocking him back onto the bed where he died a short time thereafter.  Appellant then assaulted Abernathy, striking her on the face, and ordered her to pick up her one-year-old son and go downstairs to the living room.

> About the time of Abernathy's beating, John Hurt, an unarmed security guard for the apartment complex, arrived on the scene.  Hurt initially went to the rear of the apartment where he found a broken window.  Upon hearing screams and seeing a man and a woman move toward the front door of the apartment, Hurt ran to the front of the apartment in time to observe appellant and Abernathy coming out.

> Abernathy told Hurt that her boyfriend had been shot.  Hurt, walking in front of appellant, followed Abernathy upstairs to Flanaghan's body.  While there, appellant produced the pistol from his pocket, ordered Hurt to kneel on the floor and announced that he was going to kill both Hurt and Abernathy.  Appellant aimed the revolver at Hurt's head and, from a range of eighteen to twenty inches, fired two shots. Both shots missed.  When appellant attempted to fire a third shot, the weapon misfired.  Appellant thereupon left the bedroom and was heard reloading the revolver.  As soon as appellant left the room, Hurt radioed for police assistance.

> After reloading, appellant reentered the bedroom, pistol-whipped Abernathy twice and ordered Hurt and Abernathy to accompany him out of the apartment.  Once they were all outside, a Cincinnati police cruiser arrived on the scene and appellant fled on foot.  Not long thereafter, appellant's pistol was recovered from a nearby trash dumpster and appellant was arrested without incident at his sister's apartment.

On March 1, 1985, Poindexter was indicted on two counts of aggravated murder for the death of Kevin Flanaghan, in violation of Ohio Rev. Code § 2903.01; one count of aggravated burglary, in violation of Ohio Rev. Code § 2911.11; one count of felonious assault, in violation of Ohio Rev. Code § 2903.11; one count of kidnaping, in violation of Ohio Rev. Code § 2905.01; and one count of attempted aggravated murder, in violation of Ohio Rev. Code § 2923.02. Both counts of aggravated murder contained the following capital specifications: (1) the aggravated murder was committed during the course of an aggravated burglary in which Poindexter was the principal offender, in violation of Ohio Rev. Code § 2924.04(A)(7); and (2) the aggravated murder occurred as part of a course of conduct involving the purposeful attempt to kill two or more persons, in violation of Ohio Rev. Code § 2929.04(A)(5).

Following his indictment, the trial court appointed Dominic Perrino to represent Poindexter. On April 8, 1985, Peter Pandilidis was added to the defense team.[1]

Poindexter pleaded not guilty, and the matter proceeded to trial on May 9, 1985. A jury convicted Poindexter on all counts as charged. Five days after the trial ended, the mitigation phase began. After an evidentiary hearing, the jury recommended the death penalty. On June 12, 1985, the trial court adopted the jury's recommendation and sentenced Poindexter to death. The trial court also sentenced Poindexter to consecutive terms of incarceration of ten to twenty-five years on the aggravated burglary conviction, eight to fifteen years on the felonious assault conviction, and seven to twenty-five years on the attempted aggravated murder conviction.

The Ohio Court of Appeals affirmed Poindexter's conviction and sentence on direct appeal, *see State v. Poindexter*, No. C-850394, 1996 WL 14888 (Ohio Ct. App. Dec. 24, 1986) (December 24, 1986), as did the Ohio Supreme Court, *see State v. Poindexter*, 520 N.E.2d 568 (Ohio 1988). The United States Supreme Court denied certiorari. *See Poindexter v. Ohio*, 488 U.S. 916 (1988).

On July 26, 1989, Poindexter filed his petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21. The state court denied the petition, and the Ohio Court of Appeals affirmed. *See State v. Poindexter*, No. C-890734, 1991 WL 30613 (Ohio Ct. App. Mar. 6, 1991) (per curiam).

In December 1991, Poindexter filed a petition in federal district court for a writ of habeas corpus under § 2254. Shortly thereafter, the Ohio Supreme Court set out a new state procedure for presenting claims of ineffective assistance of appellate counsel. Because his petition contained such claims, Poindexter filed an application for delayed reconsideration in the First District Ohio Court of Appeals and moved the federal district court to hold his § 2254 petition in abeyance. Instead, the district court dismissed the petition on July 9, 1992, pending exhaustion of the new state remedy.

The Ohio Court of Appeals summarily denied the application for delayed reconsideration on December 1, 1992, and the Ohio Supreme Court affirmed on October 27, 1993, also denying Poindexter's motion for delayed reinstatement of his appeal.

Poindexter returned to federal court. While the instant federal petition was pending, Poindexter filed a second petition for post-conviction relief in state court under Ohio Rev. Code § 2953.21. The petition, as amended, included only a claim arising under *Brady v. Maryland*, 373 U.S. 83 (1963). The state trial court declined to entertain Poindexter's successive petition, and the Ohio Court of Appeals affirmed the denial of relief. *See State v. Poindexter*, No. C-960780, 1997 WL 605086 (Ohio Ct. App. Aug. 29, 1997) (per curiam). The Ohio Supreme Court denied leave to appeal.

---

[1] For the most part, future references to "trial counsel" are to both Perrino and Pandilidis.

After exhausting his state court remedies, Poindexter filed his writ of habeas corpus petition. On December 15, 2000, the district court granted Poindexter's petition in part and denied it in part. The court conditionally granted the writ based upon its conclusion that Poindexter's trial counsel were ineffective because they failed to (1) cross-examine prosecution witness John Hurt about inconsistencies between his trial testimony and the statement he recorded on the date of the events; (2) investigate, prepare, and present a cohesive defense; and (3) present significant mitigation evidence. A separate judgment was entered the same day. On February 7, 2001, the district court denied Poindexter's motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e).

Poindexter moved the district court to issue a certificate of appealability ("COA") as to the claims, which the district court rejected. The district court denied the COA as to all of Poindexter's remaining grounds for relief. This Court granted a COA as to the following issues: (1) whether Poindexter was deprived of the effective assistance of counsel based on trial counsel's admission during the guilt phase that Poindexter committed the murder; (2) whether Poindexter was deprived of the effective assistance of counsel because appellate counsel failed to raise meritorious issues on direct appeal; (3) whether Poindexter's due process rights were violated based on prosecutorial misconduct in closing; (4) whether Poindexter's due process rights were violated by the State's withholding of exculpatory evidence; (5) whether the district court's instructions during the sentencing phase deprived Poindexter of his due process right to a fair trial; and (6) whether the district court erred in determining that Poindexter's ineffective assistance of appellate counsel claim was procedurally defaulted.

## II. Standards of Review

Because Poindexter filed his habeas corpus petition before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, we apply the pre-AEDPA standard of review. *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Bradshaw v. Stumpf*, 125 S. Ct. 2398, 2405 (2005). Under this standard, this Court presumes the correctness of state court factual findings, which are rebuttable only by clear and convincing evidence. *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001). Determinations of law and mixed questions of law and fact are reviewed de novo. *Id.*[2]

## III. Analysis

### A. The Warden's Appeal

As noted above, Respondent challenges the district court's ruling that Poindexter's trial counsel were ineffective at the guilt and penalty phases of his capital trial. To establish ineffective assistance of counsel, the defendant must show both that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 688, 692 (1984). In assessing deficient performance, or "cause," we must decide whether counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. In assessing prejudice, we must decide whether the error is such that there is reasonable probability that, but for the error, the result of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

---

[2]Poindexter filed his habeas petition on March 10, 1994, prior to the effective date of the AEDPA, as well as a motion to amend, filed on November 27, 1995. Although prior to the enactment of the AEDPA, district courts were obliged to dismiss mixed petitions. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982). Post-AEDPA, courts now have discretion to stay a mixed habeas petition to allow a petitioner to present his unexhausted claims to the state court, and then return to federal court. *See Rhines v. Weber*, 125 S. Ct. 1528, 1535 (2005).
Both parties agree as to the standard of review.

### 1. Failure to Cross-Examine Hurt

The district court held that Poindexter's trial counsel were ineffective for failing to cross-examine prosecution witness John Hurt regarding inconsistencies between a statement he gave the police on the day of the crime and his testimony on direct examination at Poindexter's trial. In his statement to the Cincinnati Police Homicide Squad shortly after the murder of Flanaghan, Hurt told Officer Thomas Cameron that Poindexter fired two shots at him and that he, Hurt, was standing at the time the shots were fired. Hurt further explained that Poindexter pointed the gun at him again, told him to get on his knees, and then went into the hallway, where it sounded to Hurt like Poindexter was reloading his gun. At trial, Hurt testified that Poindexter pointed a gun at him, told him to get on his knees, and then fired two shots at him. Hurt stated that Poindexter then left the room, and that when he returned, Poindexter pointed the gun at him again. Trial counsel did not cross-examine Hurt regarding this inconsistency.

The Ohio Court of Appeals considered Poindexter's ineffective assistance of counsel claims on his appeal from the denial of his petition for post-conviction relief and concluded that the claims were properly denied. *See State v. Poindexter*, No. C-890734, 1991 WL 30613, at *8-10 (Ohio Ct. App. Mar. 6, 1991). The state court of appeals was not presented with, and therefore did not consider, Poindexter's ineffective assistance claim on this basis. However, in a successive post-conviction petition, Poindexter alleged that the prosecutor improperly withheld Hurt's statement to the police, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *See State v. Poindexter*, No. C-960780, 1997 WL 605086, at *1 (Ohio Ct. App. Aug. 29, 1997) (per curiam). The state court of appeals rejected the claim on the grounds that it had not been conclusively shown that the statement was not provided. The state court of appeals further concluded that the statement was not "out-come altering" exculpatory evidence under *Brady* anyway, because

> [t]he police statement did not contradict the essential fact, as brought out by both Hurt's trial testimony and the trial testimony provided by Tracey Abernathy, that appellant fired shots at Hurt. The uncovering of conflicting accounts as to whether Hurt was standing or kneeling when the shots were fired was, essentially, immaterial to the attempted murder charge.

*Id.* at *3.

The district court denied Poindexter's *Brady* claim, because trial counsel acknowledged seeing a transcript of Hurt's prior recorded statement. Nonetheless, it found that the evidence supported Poindexter's ineffective assistance of counsel claim, and ruled

> [t]he matter was of great relevance, inasmuch as one of the two death penalty specifications with which Petitioner was charged was based upon the allegation that he had attempted to murder John Hurt. The State relied upon the testimony of Mr. Hurt and Ms. Abernathy to prove that Petitioner had intended, and, thus, attempted, to kill John Hurt when he fired the shots of which Mr. Hurt and Ms. Abernathy testified. Counsel could not have made a strategic decision to ignore the discrepancies, therefore, on the ground that they did not relate to a relevant matter.

> . . . Had counsel raised the matter during cross-examination, they would have cast some doubt upon the accuracy of Mr. Hurt's trial testimony.

The district court further found that counsel's failure to cross-examine constituted prejudice:

> [T]he State relied heavily upon Mr. Hurt's testimony in its closing arguments with respect to the second death penalty specification. . . . Moreover, the jury asked that the testimony of Mr. Hurt and Ms. Abernathy concerning the distance of the gun

from Mr. Hurt when Petitioner fired shots be read back to them. . . . Apparently, Mr. Hurt's testimony was significant to the jury.

Had the jury been made aware of the inconsistencies between Mr. Hurt's recorded statement, made within hours of the events in question, and his trial testimony, the jury might have chosen to discredit both Mr. Hurt's and Ms. Abernathy's testimony concerning the shots fired by Petitioner after Mr. Hurt's arrival. While Petitioner could, of course, have attempted to kill Mr. Hurt while he was standing just as easily as while he was kneeling, the fact of the inconsistency might well have cast sufficient doubt upon the versions of the events provided from the witness stand, that the jury would have been unable to conclude, beyond a reasonable doubt, that Petitioner intended, and thus, attempted, to murder Mr. Hurt.

The result of a conclusion by the jury to convict Petitioner of only one death penalty specification is a matter for speculation.

The district court concluded that there was a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. It therefore granted Poindexter's claim for relief on this basis.

Even if we assume that counsel were deficient for failing to cross-examine Hurt regarding the inconsistencies in his testimony, Poindexter's claim should not have been granted because there was no prejudice. *See Strickland*, 466 U.S. at 697 (stating that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed"); *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1670 (2005) (same). Although the Ohio Court of Appeals addressed the issue of prejudice due to counsel's failure to point out the inconsistencies in Hurt's statements in the context of Poindexter's *Brady* claim rather than his *Strickland* claim, the analysis for both issues is the same: there is no reasonable probability that the outcome of Poindexter's proceedings would have been different. Both Hurt and Abernathy testified that Poindexter pointed the gun at Hurt's head and fired two shots.[3] Furthermore, one of the shots was close enough to leave powder burns on the side of Hurt's face. Abernathy and Hurt also testified consistently that Poindexter attempted to fire a third shot at Hurt, but ran out of ammunition.

Thus, in light of the evidence presented at trial, the Ohio Court of Appeals' ruling that the inconsistent statements were immaterial to the result is entitled to deference. Poindexter's suggestion that shooting while Hurt was standing could have been interpreted as warning shots is the type of speculation we rejected in *Baze*. *See Baze*, 371 F.3d at 322 (stating that where "one is left with pure speculation on whether the outcome of the trial . . . could have been any different," there is an insufficient showing of prejudice). Rather, there is no reasonable probability that, whether Hurt was standing or kneeling, those shots fired at his head would not be interpreted as an attempt on his life.

Further, Poindexter was also found guilty of an additional capital specification that the aggravated murder of Kevin Flanaghan was committed during the course of an aggravated burglary. Trial testimony clearly established that Poindexter committed the aggravated burglary. Abernathy testified that Poindexter broke into her apartment. Hurt testified that, after receiving an anonymous

---

[3] Abernathy's trial testimony is internally inconsistent. Abernathy initially testified that Poindexter fired the gun prior to telling Hurt to get on his knees, and that he fired it two times. In the next breath, also on direct examination, Abernathy testified that Poindexter did not fire the gun until Hurt was on his knees, and that he fired it twice. Despite Abernathy's internal inconsistencies, what remains consistent with both Abernathy's and Hurt's testimony are the facts that Poindexter fired two shots at Hurt's head.

call, he observed a broken window at Abernathy's apartment complex. Neighbor Jacqueline Woods testified that on the date of the murder, she saw someone trying to get into the apartment and called the security guard. Thus, even if Hurt's testimony might have altered the jury's finding, there is no reasonable probability that the jury would not have convicted Poindexter on the capital specification regarding the aggravated murder during commission of an aggravated burglary. In any event, Poindexter does not challenge this verdict. In short, Poindexter cannot meet the prejudice prong of the *Strickland* test. The district court therefore erred in granting the writ on this basis because Poindexter did not establish a *Strickland* violation.

### 2. Investigation, Preparation, and Presentation of Defense

In his first post-conviction petition, Poindexter asserted that his counsel were deficient for failing to request a continuance to pursue his alibi defense, for telling the jury during opening statements that there would be an alibi and then failing to present one, and for failing to present a "crime of passion" defense. The state trial court denied Poindexter's ineffective assistance claim, ruling that there was no cause or prejudice. The state trial court made several findings of fact in rejecting this claim. *See* Common Pleas Findings of Fact, Conclusions of Law and Entry Denying the Petition to Vacate or Set Aside Sentence Without an Evidentiary Hearing. The state court found, *inter alia*, that (1) the alibi defense was filed at Poindexter's insistence; (2) the "crime of passion" defense could not be presented because Poindexter never admitted committing the offense (*Id.*); (3) defense counsel interviewed all critical witnesses and attempted to find additional witnesses; (4) no continuance was requested because it was unnecessary (*Id.*); (5) trial counsel prepared the jury in voir dire and selected only jurors who assured counsel that they would not find against the defendant if he chose not to present an alibi (*Id.* at 1896); and (6) trial counsel prepared the jury for the probability that no alibi would be presented (*Id.* at 1908.) The Ohio Court of Appeals affirmed, ruling that under *Strickland*, "[t]he alleged deficiencies in the performance of Poindexter's trial counsel appear upon close inspection to involve strategic choices made after less than complete investigation that were supported by reasonable professional judgment to limit that investigation." *Poindexter*, 1991 WL 30613, at *9.

The district court granted the writ on the basis that trial counsel rendered ineffective assistance by failing to present a cohesive defense. The court noted at the outset that the decision to file a notice of alibi was Poindexter's decision, apparently made against trial counsel's recommendation, but found that fact "essentially irrelevant . . . in the analysis of [Poindexter's] claims." (*Id.*) The district court held that trial counsel were not obligated to pursue the alibi defense and stated that "[c]ounsel could have abandoned the defense before opening statements, in consultation with [Poindexter], had they learned that the putative alibi witness would not testify in Petitioner's favor." The district court faulted trial counsel for failing to speak to the putative alibi witness prior to trial, and stated that trial counsel "inexplicably" failed to request a continuance to find and interview the witness. The district court found that counsel's deficient performance prejudiced Poindexter's defense because "they were unprepared to advise their client concerning the best approach to his case." The district court held that counsel's failure to prepare and ask for a continuance left them unable to dissuade Poindexter from pursuing his alibi defense, which in turn prevented counsel from pursuing a crime of passion theory of defense. The court concluded that Poindexter was therefore deprived "of the opportunity to pursue a cogent defense strategy, rendering the proceeding fundamentally unfair."

Upon review of the record, we conclude that the district court erred in granting the conditional writ as to this issue. The record reflects, and the state courts found as a matter of fact, that trial counsel were dealing with a difficult client, and that they made strategic decisions after reasonable investigation. On the first day of trial, lead counsel Dominic Perrino informed the court that, on behalf of their client, defense counsel filed an alibi defense, "with his insistence." Perrino added that: "We have conferred with him for a lengthy period of time, for many days, in fact– in

fact, approximately a couple weeks. With his insistence, we have filed an alibi in this case. Perrino stated in his deposition testimony during the federal habeas proceedings that "we had a lot of difficulty with Poindexter as to how to proceed." Poindexter told counsel that he was on a bus at the time of the shootings and that the bus driver would remember him because of the dreadlocks. Perrino stated in the district court proceedings that he tried to substantiate Poindexter's alibi prior to trial, and that he interviewed several witnesses, including Tracy Abernathy, John Hurt, and neighbors Andrew Leonard and Jacqueline Wood. Perrino explained that, prior to trial, he tried to locate the bus driver. He had difficulty obtaining cooperation from the bus company, and subpoenaed two bus drivers on Poindexter's route the evening of the murder. Perrino stated that he was not able to speak with the bus driver until the middle of the trial, and that the driver stated that he would not be able to identify Poindexter. Perrino further indicated that based on his pretrial investigation the alibi "would not fly", and that he tried to talk Poindexter out of filing the defense (*Id.* at 2776-77.)

Despite overwhelming evidence that Poindexter was at his ex-girlfriend's apartment and committed the murder, he told his attorneys that he was on a Metro bus at the time of the shootings and that the bus driver would remember him because of his dreadlocks. Perrino investigated the alibi, despite difficulty in locating the drivers, and eventually spoke to one driver, who clearly stated that he would not be able to identify Poindexter. When his efforts at substantiating Poindexter's alleged alibi proved unsuccessful, Perrino made the strategic decision not to proceed further, and repeatedly tried to convince Poindexter to abandon the claim. Poindexter also refused to allow his attorneys to enter into plea negotiations in an effort to reduce the charge.

Review of counsel's performance is highly deferential and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. While counsel has "a duty to make reasonable investigations," this includes the duty "to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691; *see also Sims v. Livesay*, 970 F.2d 1575, 1581 (6th Cir. 1992) (quoting *Strickland*, 466 U.S. at 691)); *accord Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (stating that "strategic choices made after less than a complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation") (quoting *Strickland*, 466 U.S. at 690-91). Here, Perrino exercised reasonable professional judgment in limiting his efforts after he was unable to substantiate Poindexter's claimed alibi. This is especially true given that several people, including Hurt, neighbors Leonard and Wood, and most importantly, Abernathy, all had ample opportunity to observe and place Poindexter at the scene of the murder and to identify him as the assailant and murderer. The state courts did not err by ruling that counsels' performance in the investigation and presentation of a coherent defense met *Strickland* standards. *Cf. Towns v. Smith*, 395 F.3d 251, 258-59 (6th Cir. 2005) (holding that trial counsel's failure to investigate a potentially important witness in a robbery and felony murder constituted ineffective assistance, especially where counsel knew of, and requested that the witness be kept in the county jail prior to trial, and there was a reasonable probability that, had the jury heard the witness's testimony, the outcome would have been different); *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (collecting cases holding that counsel's failure to investigate a potential alibi witness constituted ineffective assistance). The district court erred in ruling to the contrary.

For the same reasons, the district court erred in granting the writ on the basis that counsel should have requested a continuance to further search for the elusive bus driver in an effort to present a cohesive alibi defense.

As for any possible "crime of passion" defense, the state court properly found that it was inconsistent with Poindexter's continued insistence that he did not shoot Kevin Flanaghan. In addition, evidence that Poindexter discussed his plan to kill Abernathy's current boyfriend a week before the murder, *see Poindexter*, 520 N.E.2d at 569, and that he broke into Abernathy's townhouse

apartment while the victim was asleep, establishes prior intent and is utterly inconsistent with a crime of  passion defense.  Given the strength of the State's evidence, there is no reasonable probability that such a defense would have been successful.

In sum, the district court erred in granting the writ on this basis.

### 3. Presentation of Mitigating Evidence At Sentencing

The district court also conditionally granted the writ on the grounds that counsel failed to present significant mitigation evidence.  Respondent challenges this ruling.

On May 20, 1985, five days after the conclusion of the trial, the mitigation phase began. Defense counsel presented five witnesses during this phase: (1) Tammy Lancaster, Poindexter's sister; (2) John Davis, Poindexter's close friend and father figure; (3) Maggie Lancaster, Poindexter's grandmother; (4) Jewell Lancaster, Poindexter's mother; and (5) Poindexter himself. Tammy Lancaster testified that her brother was a good student, was involved in gymnastics in school, was peaceful and quiet and kept to himself.  John Davis testified that Poindexter got along with everyone, that he was "always good," that he read the Bible a lot, and went to work every day. Maggie Lancaster testified that Poindexter had always been a good child, read his Bible, and was "always good and kind to everybody."  She said that he was quiet and peaceful and that she had never known him to have any trouble.  Jewell Lancaster testified that she never had any problems with her son, that he was very involved in gymnastics in school, and that he quit school four weeks before graduation.  She asked the jury to have mercy on her son.

Poindexter made an unsworn statement.  He told the jury that he had known Tracy Abernathy since she was six years old, that the two had lived together as husband and wife for two years, and that they had two sons.  He described an incident where he slapped Abernathy for wearing an "obscene" miniskirt.  He stated that Abernathy's mother had instigated everything against him, because she disliked dreadlocks.  At this point, Poindexter refused to continue reading the prepared statement and his attorneys called a recess at which they convinced him to continue.  (*Id.*)  After resuming the statement, Poindexter told the jury that other than domestic violence charges, he had never been in trouble with the law.  He told the jury that he loved his family and his children very much, that he was a religious person, that he did not believe in violence, and that he did not use profanity, drugs, or alcohol.  He told the jury that he believed in God and had always tried to live a good and decent life.  Lastly, he yelled, "And the main thing, I didn't kill that man," and slammed the microphone down.  The jury nonetheless sentenced Poindexter to death.

Poindexter raised ineffective assistance in mitigation in his first petition for post-conviction relief, claiming that counsel failed to present evidence of his troubled background, paranoid personality disorder, Tracy Abernathy's unfaithfulness and his Rastafarian religion.  In support, Poindexter offered the affidavits of family members, neighbors, trial counsel, and two experts, a psychologist and an anthropologist.  The state trial post-conviction court held that neither expert explained what special effect, if any, Poindexter's paranoid personality disorder had on Poindexter's planning and executing an aggravated murder, or how it affected his ability to know right from wrong or to conform to the requirements of the law.  The court further held that defense counsel's tactic at mitigation was to demonstrate that Poindexter was not a dangerous person, and that except for his relationship with Tracy Abernathy, he was a quiet, religious, peace-loving man.  The court also observed that in his investigation, trial counsel obtained a prior pre-sentence report, talked to various relatives, and spent hours with the defendant.  The court noted that there was no hint of mental disease or defect. The court concluded that counsel's tactic of portraying Poindexter to be a quiet, peaceful, religious person was within the acceptable range of practice.

The district court rejected Poindexter's arguments that evidence concerning Poindexter's Rastafarian religion and evidence of Abernathy's alleged unfaithfulness would have served to mitigate Poindexter's actions and did not support his ineffective assistance of counsel claim. However, the district court held that the other mitigation evidence supported Poindexter's ineffective assistance claim. First, the court noted that in his 1995 deposition testimony, trial counsel Pandilidis testified that co-counsel Perrino conducted the investigation for the mitigation phase, and that Perrino stated that he did not learn of a history of abuse in Poindexter's family in the course of that investigation. The district court found that this evidence, along with the transcript of the mitigation phase of the trial, suggested that counsel failed to conduct a thorough investigation in preparation for the mitigation phase and to present Poindexter's best case in mitigation.

The district court then noted that the following evidence was available at the time of the mitigation phase and was not discovered by counsel or presented to the jury. First, the court noted that Petitioner's childhood neighbor, Betty Gamble, stated in an affidavit that Poindexter's father beat Petitioner, his mother, and his sister. She further stated that Poindexter's mother ignored her children, did not cook for them, sent them to school in dirty clothes, and beat them. Gamble also stated that Petitioner's mother had attempted to kill the entire family by shutting them in the house and turning on a gas stove. Lastly, Gamble indicated that Poindexter's attorneys did not contact her at the time of trial. Second, another neighbor, Ledonia Clark, reiterated in an affidavit that Poindexter's mother had attempted to kill herself and her children. She also had not been contacted by counsel at the time of trial. Third, John Davis, a former long-term boyfriend of Poindexter's mother, stated in an affidavit that Poindexter's mother was a heavy drinker and used marijuana almost daily. He also stated that Poindexter's mother was frequently involved in violent fights in front of her children. Fourth, Poindexter's mother stated that when Poindexter was a very small child, Poindexter's father would frequently beat her and that she suspected that the children saw the fights.

The district court found that trial counsel "conceded that they did not conduct a thorough investigation and, specifically, did not investigate Petitioner's childhood and family background", and thus, did not make a strategic choice to keep such evidence from the jury. Accordingly, the district court concluded that counsel's penalty phase performance "fell at least marginally below an objective standard of reasonable representation," meeting the first prong of the *Strickland* test. The court also found that the evidence concerning Poindexter's childhood that was not presented to the jury might have affected the jury's appraisal of his moral culpability. The district court therefore granted relief on Poindexter's ineffective assistance at mitigation without addressing the significance, if any, of the expert testimony.

"The Constitution . . . requires defense counsel to reasonably investigate a defendant's background and present it to the jury." *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997). Trial counsel's failure to conduct "a reasonable investigation of a defendant's psychiatric history and family background and to present mitigating evidence to the jury at sentencing, can constitute ineffective assistance." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Clark v. Mitchell*, 425 F.3d 270, 284 (6th Cir. 2005). "In assessing counsel's investigation, we must conduct an objective review of their performance, measured for 'reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 688).

Neither the Supreme Court nor this Circuit have hesitated to find ineffective assistance where counsel has failed to fulfill this obligation. *See, e.g., Wiggins*, 539 U.S. at 523-28 (finding ineffective assistance based on counsel's failure to follow leads that would have lead them to discover evidence of severe privation and abuse as a child from his alcoholic mother, and sexual torment and rape in foster care, as well as diminished mental capacities); *Williams v. Taylor*, 529 U.S. 362, 395 (2000) (finding counsel's performance deficient where counsel failed to investigate or otherwise prepare for mitigation until a week before trial and failed to "conduct an investigation

that would have uncovered extensive records graphically describing Williams' nightmarish childhood"); *Harries v. Bell*, 417 F.3d 631, 638 (6th Cir. 2005) (finding that counsel failed to conduct an adequate investigation where counsel limited their investigation to contacting by telephone the petitioner's mother and brother, sent requests for information to some institutions in which the petitioner had been confined, interviewed only four witnesses–the petitioner, his co-defendant, and two state witnesses, and declined to seek the assistance of a mental health expert or to conduct a thorough investigation into the petitioner's history of mental health or family background); *Hamblin v. Mitchell*, 354 F.3d 482, 488 (6th Cir. 2003) (adopting the 1989 and 2003 standard for attorneys representing death penalty prisoners in 1982 and holding that counsel's failure to adhere to those guidelines constituted ineffective assistance of counsel; finding that had counsel investigated the case, counsel would have found a large body of mitigating evidence including fact that the petitioner grew up in a poor and unstable environment and likely suffered from a mental disability or disorder); *Powell v. Collins*, 332 F.3d 376, 399 (6th Cir. 2003) (holding that trial counsel's failure to construct the defendant's social history through access to background records and interviews with family and friends constituted deficient performance); *Coleman v. Mitchell*, 268 F.3d 417, 452 (6th Cir. 2001) (holding that trial counsel were ineffective for failing to investigate and present the petitioner's highly traumatic childhood, two head injuries, psychological history showing a borderline retarded range IQ and mixed personality disorder); *Carter v. Bell*, 218 F.3d 581, 597, 599 (6th Cir. 2000) (finding deficient performance because counsel failed to investigate and present at mitigation evidence of the defendant's illegitimacy, family history, limited education, low IQ, mental condition and positive relationships with children); *Austin v. Bell*, 126 F.3d 843, 849 (6th Cir. 1997) (holding that counsel's failure to investigate and present mitigation "because he didn't think it would do any good" rendered death sentence unreliable); *Glenn v. Tate*, 71 F.3d 1204, 1208-11 (6th Cir. 1995) (holding that counsel's investigation was deficient where the attorneys presented some, but failed to uncover more convincing mitigating evidence, including evidence of the petitioner's mental retardation, his neurological impairment, and his need for attention and susceptibility to the influence of his brother). Counsel's failure to investigate is not excused by the fact that Poindexter could have provided much of this information. *Cf. Hamblin*, 354 F.3d at 492 (noting that "ABA and judicial standards do not permit the courts to excuse counsel's failure to investigate or prepare because the defendant so requested"; and cases cited therein). *See also Dickerson v. Bagley*, ____ F.3d ____, No. 04-4277, 2006 WL1867134 (6th Cir. July 7, 2006).

Based on the foregoing precedent, we agree with the district court's conclusion that Poindexter's counsel failed to conduct constitutionally adequate investigation. *See Harries*, 417 F.3d at 638. The record reflects that Poindexter's counsel failed to conduct virtually any investigation, let alone sufficient investigation to make any strategic choices possible. They did not request medical, educational, or governmental records that would have given insight into Poindexter's background. They did not request funds to enlist a psychological or psychiatric expert to evaluate Poindexter, despite the fact that he exhibited odd behavior. They did not consult with an investigator or mitigation specialist, who could have assisted in reconstructing Poindexter's social history. They failed to interview key family members and friends who could have described his upbringing. And they did not even begin to prepare for mitigation until Poindexter was convicted, which was only five days before the sentencing phase began. This was despite the fact that prevailing norms at the time of trial required counsel in a death penalty case to seek records, interview family members and friends, and obtain appropriate mental evaluations well in advance of trial. *See Hamblin*, 354 F.3d at 487-88.

Further, counsel offered no strategic explanation for failing to pursue these avenues of mitigation. Such inadequate representation in the sentencing phase satisfied the deficient performance prong of *Strickland*. *See, e.g., Coleman*, 268 F.3d at 452; *Groseclose*, 130 F.3d at 1166. Furthermore, counsel's failure to investigate, prepare, and present mitigating evidence prejudiced Poindexter because the jury was not presented with a full picture of Poindexter's troubled childhood. The details of Poindexter's poor upbringing and social history were summarized by Dr.

Eisenberg, the forensic psychologist who evaluated Poindexter in conjunction with his 1989 state post-conviction petition. First, Dr. Eisenberg detailed Poindexter's family history. He described Poindexter as coming from a "very dysfunctional family unit," and as "the product of four generations of alcoholism and physical abuse and emotional abuse." Eisenberg noted that Poindexter's maternal grandparents were alcoholics and that his mother, Jewell, drank heavily and was violent, argumentative, depressed, suicidal, and neglectful of her children. Eisenberg reported that Jewell had three significant relationships, two of which involved alcohol abuse and domestic violence. Her first husband was Will Poindexter, Dewaine's father. He was an abusive alcoholic. He left before Dewaine's birth, and Dewaine had no memory of him. Jewell's second paramour and the father of Dewaine's sister Tammy, was also an alcoholic with a history of domestic violence towards Jewell.

Jewell's third relationship was with John Davis, who testified at trial. Davis provided a somewhat "stable" relationship; however, he was married with six children. Notwithstanding, during this relationship Jewell tried to kill herself and her children by turning the gas on the stove while locking herself and her three children in the apartment. As a result, Jewell was probated to Longview State Hospital and the children were placed in various foster homes. According to Eisenberg, given Dewaine's family history of alcoholism, neglect, and violence, along with the lack of a strong father figure and the presence of an alcoholic abusive mother, "[i]t [was] no wonder that Dewaine was somewhat mistrustful of others."

Eisenberg also detailed Poindexter's psychological history. He found that Dewaine Poindexter was functioning in the borderline range of intelligence with a verbal IQ of 83 and a performance IQ of 70, resulting in a full scale IQ of 76, which places him in the fifth percentile of the population. Eisenberg also noted that the incongruity between the verbal and performance scores suggested an incongruity between his cognitive capacities and behavioral responses, such that in a stressful situation, Poindexter was likely to act out in a far more primitive manner than the situation would warrant. Eisenberg reported that Poindexter's responses on the Rorschach Inkblot Test were typical of individuals who are defensive and distrustful. The Millon Clinical Multiaxial Inventory test of basic personality functioning profiled Poindexter as excessively suspicious and mistrustful of others, and therefore restricted in his ability to express tender feelings.

Eisenberg concluded that based on the results of the psychological evaluation, clinical interviews, and review of the various records, it was his opinion that Poindexter suffers from a paranoid personality disorder, and meets the diagnostic criteria for this disorder as listed in the *Diagnostic and Statistical Manual of Mental Disorder* (3d ed.). Eisenberg explained that the disorder began during his childhood years and remained his "predominant personality style."

Eisenberg then explained how Poindexter's disorder may have affected his behavior, noting that "[p]aranoid individuals expect to be exploited by others, question the loyalty of close friends, bear grudges for long periods of time, question the fidelity of sexual partners, and have difficulty confiding in other[s] for fear that the information will be used against them. Pathological jealousy is also an important feature in many paranoid individuals." Eisenberg found all of these factors true for Dewaine Poindexter. Eisenberg added that Dewaine's relationship with Tracy Abernathy was "chaotic and abusive." He noted that Poindexter felt he had the right to tell Tracy what to do, based on the Rastafarian religion and that he believed that Tracy belonged to him. Eisenberg further noted that while incarcerated prior to the instant offense, Poindexter was aware that Tracy was seeing other men. Thus, Eisenberg stated that "[i]n my opinion, and as a result of his paranoid personality disorder, Dewaine had a pathological jealous reaction accompanied by rage. He directed this anger towards Tracy and her paramour, Kevin Flanaghan, and the security guard, John Hurt."

As Eisenberg's testimony reveals, Poindexter had a troubled upbringing and suffers from a paranoid disorder that likely caused him to distrust others and be defensive of his own actions.

Further, Eisenberg's testimony would have helped the jury understand Poindexter's attitude towards Tracy Abernathy. However, trial counsels' investigation was so minimal that they never uncovered available evidence of Poindexter's difficult upbringing and paranoid personality disorder. Both the Supreme Court and this Court have acknowledged that evidence of a psychological condition, a history of mental illness within the family, and a background of abuse and neglect are mitigating factors that a capital defendant has a right to present at sentencing. *See, e.g., Wiggins*, 539 U.S. at 636-37; *Williams*, 529 U.S. at 370-71; *Powell*, 332 F.3d at 396; *Glenn*, 71 F.3d at 1207. In short, we conclude that had counsel investigated and presented a fuller and more accurate description of Poindexter's troubled childhood, and paranoid personality disorder, there is a reasonable probability that the jury would not have recommended the death sentence. *See Wiggins*, 539 U.S. at 537 (noting that the prejudice prong is satisfied if "there is a reasonable probability that at least one juror would have struck a different balance"); *cf. Rompilla v. Beard*, 125 S. Ct. 2456, 2468-69 (2006) (holding that had counsel conducted an adequate investigation, the jury would have heard evidence of alcohol abuse, schizophrenia, and a highly abusive family life, which would have destroyed the "benign conception" presented by the petitioner and some family members and likely would have influenced the jury's appraisal of the petitioner's culpability).

For these reasons, any mitigation strategy to portray Poindexter as a peaceful person was unreasonable since that strategy was the product of an incomplete investigation. *See Strickland*, 466 U.S. at 690-91. We therefore uphold the district court's decision with further instructions to remand the case to state court for further sentencing proceedings consistent with this opinion.

### B. Poindexter's Cross-Appeal

### 1. Admission of Guilt During Closing Argument

Poindexter argues that trial counsel were ineffective for improperly conceding his guilt during closing argument. Both the state courts and the district court denied Poindexter's claim on this basis.

> Perrino made the following comments during closing:
>
> In this case, you have got serious charges. Every one of them are very serious charges. What I am arguing to you, because I am arguing for a lesser degree, doesn't mean I am arguing for innocence. And you are not to consider, ladies and gentlemen, the sentencing in this matter. What I am arguing to you is consistent with the law.
>
> . . . .
>
> You say, "If we find him guilty of aggravated burglary, do we necessarily have to find him guilty of aggravated murder?"
>
> And the answer to you is, "No, you do not."
>
> And I think that is going to be the logic.
>
> . . . .
>
> . . . You understand, you have to, if it is not incompatible, ladies and gentlemen, to find the defendant guilty of Count 3, and still not guilty of aggravated burglary, you still can find him guilty of murder. Do you understand?

The thing is, you have elements of murder, you know.  You have got murder here.  If I argued against that, I would be a fool I would be a fool [sic].

The Judge is going to charge you on murder.  He is going to charge you on that, and it is not that difficult, actually.  "The purposeful causing the death of another," and you also know what happened.  It is as simple as that, you know, so if you find him guilty of aggravated murder, that is not inconsistent.  It is not inconsistent at all.

. . . .

So, what I say to you, ladies and gentlemen, in the first count, very compatible.  There is no question.  You have murder, the elements of murder.  Possible elements of aggravated murder.  No doubt about it.  But they are not inconsistent.  Not inconsistent. The fact that you find him guilty, if you find all the other elements of aggravated burglary, doesn't necessarily mean you have to find him guilty of aggravated murder.

The state trial court ruled that trial counsel did not improperly admit guilt, that the comment merely indicated that the State had proved a murder, not an aggravated murder, and did not identify Poindexter as the perpetrator.  The state trial court also held that even if counsel had conceded Poindexter's guilt, the verdict would have been the same.

In denying Poindexter's claim, the district court stated:

The Court has read the closing arguments of Petitioner's counsel and finds no concession of guilt.  While counsel made certain remarks that were tantamount to acknowledgments that the jury was likely to conclude that Petitioner had killed Kevin Flanaghan, they never conceded guilt with respect to the aggravated murder charge or the death penalty specifications.

The evidence that Petitioner Poindexter killed Kevin Flanaghan was overwhelming.  To the extent that counsel's acknowledgment that a finding of guilt with respect to that killing was likely constituted deficient assistance, Petitioner's defense was not prejudiced by virtue of that deficiency.

A review of trial counsel's closing argument reveals that trial counsel's defense strategy was to argue that the State must prove each and every element of the charges presented in the indictment and that they failed to do so.  First, counsel argued that the State did not prove aggravated burglary, because Poindexter had two children and a wife at the apartment and could have just "lost his key." Counsel also argued that Poindexter did not have the calculated design to kill at the time he "broke" into the apartment.  Similarly, counsel asserted that the State had not proven kidnaping, and the jury should consider a lesser charge of abduction.  Counsel also argued, "I don't feel this is a case of aggravated murder.  I don't feel that the evidence, along with the law, is one of aggravated murder. You have got to decide that."  Counsel's comments were logical in light of the evidence presented and the fact that the trial court instructed the jury on the lesser-included offense of murder.  *Cf. Florida v. Nixon*, 543 U.S. 175, 189 (2004) (trial counsel's strategic decision to concede guilt at the guilt phase of a capital trial did not automatically render counsel's performance deficient).

Poindexter's reliance on *United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991), and *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001), is misplaced.  In *Swanson*, the Ninth Circuit held that the defendant received ineffective assistance of counsel because trial counsel told the jury during closing argument that the evidence against his client was overwhelming.  *Swanson*, 943 F.2d at 1074-75.  In *Lindstadt*, the court found ineffective assistance based upon counsel's gratuitous

comment that the petitioner would testify only if the prosecution had "made their case." *Lindstadt*, 239 F.3d at 202.   Thus, by mounting the witness stand in his defense, the petitioner conceded that the prosecution had "proven their case." *Id.*  By contrast, counsel in this case argued that the crime charged by the State, aggravated murder, had not been proven beyond a reasonable doubt and that the jury must consider a lesser-included offense.

In any event, assuming counsel conceded guilt, given the overwhelming evidence that Poindexter was guilty of aggravated murder, there is no reasonable probability that the outcome of the trial would have been different absent counsel's statements.  Thus, the district court did not err in denying Poindexter's claim on this basis because there was no prejudice.

### 2. Ineffective Assistance of Appellate Counsel

Poindexter argues that the district court erred in finding his ineffective assistance of appellate counsel claim to be procedurally defaulted.  Poindexter further argues that his appellate counsel were ineffective for failing to allege that the trial court erroneously instructed the jury on all of Ohio's statutory mitigating factors, instead of only those which Poindexter had argued.

### a. Procedural Default

Generally, federal courts may not consider habeas claims not considered by state courts due to procedural default.  *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000).  This Court applies the familiar test of *Maupin v. Smith* to determine whether a claim is procedurally defaulted:  For the doctrine to apply, there must be a state procedural rule that the petitioner failed to follow, that the state courts actually enforced, and that constitutes an adequate and independent state ground to foreclose review of the federal constitutional claim.  785 F.2d 135, 138 (6th Cir. 1985).  However, the petitioner may excuse the default if he can show cause for failure to follow the rule and prejudice resulting therefrom.  *Id.*

In this case, the Ohio Court of Appeals affirmed Poindexter's conviction and sentence on direct appeal on December 24, 1986.  He first raised his ineffective assistance of appellate counsel claim on July 26, 1989, in a petition for post-conviction relief in the trial court.  The trial court refused to hear the claim, and the Ohio Court of Appeals affirmed that ruling in December 1991.  On February 19, 1992, the Ohio Supreme Court issued *State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992).  On April 17, 1992, Poindexter filed an application for delayed reconsideration in the Ohio Court of Appeals, relying on *Murnahan.*   On December 1, 1992, the Ohio Court of Appeals dismissed the appeal as untimely.  The court stated in pertinent part:

> Appellant has failed to demonstrate good cause pursuant to App. R. 14(B) to justify the delay in applying for reconsideration beyond the time permitted by App. R. 26. In view of the settled law in this district with respect to the pursuit of claims of ineffective assistance of appellate counsel, see, *e.g., State v. Rone* (Aug. 31, 1983), Hamilton App. No. C-820640, unreported, we specifically reject, under the circumstances of this case, the proposition that good cause for the delay is provided by the Ohio Supreme Court's decision in *State v. Murnahan* (1992), 63 Ohio St. 3d 60, 584 N.E.2d 1204.

The district court found that Poindexter's ineffective assistance of appellate counsel claim was procedurally defaulted.  The district court held that although prior to *Murnahan*, the procedure in Ohio for raising claims of ineffective assistance of appellate counsel was unsettled, in 1983, the Court of Appeals for Hamilton County, the same court to which Poindexter appealed his conviction and sentence, decided *Rone*.  In *Rone*, the First District suggested alternatives to a post-conviction relief petition by which a petitioner could challenge the effectiveness of his appellate counsel. Because *Rone* was available to Poindexter, yet he availed himself of none of the suggested remedies,

the district court concluded that Poindexter's ineffective assistance of counsel claim was procedurally defaulted unless he could show cause and prejudice or actual innocence to excuse the default.

Our decision in *Hicks v. Collins*, 384 F.3d 204 (6th Cir. 2004), is controlling. There, as in this case, the petitioner incorrectly asserted his ineffective assistance of appellate counsel claim in his petition for post-conviction relief, and the court dismissed the claim pursuant to the rule in *Rone*. *Id.* at 212. Thereafter, the Ohio Supreme Court adopted the rule in *Murnahan*, and the petitioner waited seven months after that decision to file a delayed reconsideration application. *Id.* The Ohio Court of Appeals denied the application for reconsideration because the petitioner had failed to show good cause to justify his delay in filing the reconsideration motion. *Id.* The *Hicks* court held that an adequate and independent state ground barred the federal court from considering the petitioner's claim. *Id.* (citing *Coleman v. Mitchell*, 244 F.3d 533, 539-40 (6th Cir. 2001)).

Here, Poindexter likewise initially filed his ineffective assistance of appellate counsel pursuant to a state post-conviction petition prior to the *Murnahan* decision and did not file a petition for delayed reconsideration in the state court of appeals until nearly two months after *Murnahan* was decided. Similarly, the appeal was filed in Ohio's First District Court of Appeals, which had in place since 1983 the procedure dictated by *Rone*. Thus, as in *Hicks*, we are constrained to conclude that Poindexter had procedurally defaulted his ineffective assistance of appellate counsel claim, because the rule of *Rone* was "well settled" by the time he filed the claim and was, therefore, an adequate and independent state ground. *See Hicks*, 384 F.3d at 212; *see also Sowell v. Bradshaw*, 372 F.3d 821, 827 n.2 (6th Cir. 2004) (citing *Rone*); *Coleman*, 244 F.3d at 540 (holding that "[b]efore the Ohio Supreme Court's decision in *Murnahan*, it was well established in [Hamilton County], the appellate district in which Coleman's appeal was heard, that claims of ineffective assistance of appellate counsel were to be raised in a delayed motion for reconsideration and were not cognizable in state post-conviction proceedings"); *cf. Franklin v. Anderson*, 434 F.3d 412, 431-32 (6th Cir. 2006) (holding there was no procedural bar where the petitioner filed his petition for post-conviction relief containing an ineffective assistance of appellate counsel claim after *Murnahan* had issued; distinguishing *Hicks* on the grounds that the petitioner in that case first raised his ineffective assistance of appellate counsel claim in his state post-conviction petition prior to the *Murnahan* decision). In sum, we hold that the district court's ruling was correct.

### b. Merits

Even if Poindexter were able to present an appropriate excuse for failing to bring his ineffective assistance of appellate counsel claim in a proper and timely manner, the claim is meritless. In support of his merits argument, Poindexter relies on *State v. DePew*, 528 N.E.2d 542 (Ohio 1988), which held that "it is the defendant who has the right to present and argue the mitigating factors," and that the prosecution may not comment on any factors not raised by the defendant. *Id.* at 557; *see also Combs v. Coyle*, 205 F.3d 269, 291-92 (6th Cir. 2000) (stating that under Ohio law, trial court's instruction on all seven statutory mitigating factors in the penalty phase constituted error, where the defendant had raised only two; instructing the state court not to repeat the error upon likelihood of retrial of the petitioner). The district court held that the claim was procedurally defaulted.

Assuming that Poindexter's claim was properly preserved for review, it is rejected. Poindexter's direct appeal merits brief was filed in January 1986. *DePew*, upon which Poindexter relies, was not issued until August 31, 1988. At the time counsel prepared Poindexter's brief on direct appeal, this issue was not "significant and obvious"; although there was no contrary authority, there was also no supporting authority. *See Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999) (including in list of factors to be considered in evaluating appellate counsel's competence whether the omitted issues were "significant and obvious," and whether there was "arguably contrary

authority on the omitted issues"). Moreover, the Ohio Supreme Court in *DePew* found error but not prejudicial error because the trial court merely read all the factors but made no comment on the factors that were not presented by the defendant. *DePew*, 528 N.E.2d at 557-58; *see also State v. Hutton*, 797 N.E.2d 948, 957-58 (Ohio 2003) (noting that the Ohio Supreme Court had never reversed a death sentence on the ground that the trial court gave the jury an instruction that neutrally listed all statutory mitigating factors, even though the list included factors the defense had not presented; characterizing such errors as either harmless or not plain error). Given the relative merit of the claim as compared to those that counsel did raise, Poindexter cannot overcome the presumption of effective assistance. As we observed in *Coleman*, "'[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'"   268 F.3d at 430 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Furthermore, in *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court held that professional judgment of appellate counsel includes the determination of which colorable claims to raise on appeal, and that appellate counsel is not ineffective for failing to raise every colorable claim. *Jones*, 463 U.S. at 753-54; *see also*, *Coleman*, 268 F.3d at 430-31 (citing *Jones*). Poindexter has not presented any facts to lend particular importance to this claim. *See Coleman*, 268 F.3d at 431. Thus, Poindexter has not established cause or prejudice sufficient to warrant issuance of the writ.

### 3. Prosecutorial Misconduct

Poindexter asserts that the prosecutor violated his due process rights by referencing statutory mitigating factors to the jury that Poindexter did not raise or argue during sentencing. During his closing argument during the mitigation phase, the prosecutor listed all nine factors for the jury and argued why they were not present in Poindexter's case. The district court ruled that this issue was procedurally defaulted because it was not presented to the Ohio Supreme Court on direct appeal. This Court granted a certificate of appealability on this issue.

As noted above, we have recognized that reference by the prosecutor or the trial judge to all statutory factors, including factors not presented by the defendant, impermissibly focuses the jury's attention on the absence of those mitigating factors and is, therefore, improper under Ohio law. *Combs*, 205 F.3d at 292 (citing *DePew*, 528 N.E.2d at 557). Such an error does not warrant habeas relief, however, because the instructions deal with Ohio law and do not raise constitutional concerns. *Hill v. Mitchell*, 400 F.3d 308, 333 (6th Cir. 2005); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000). Furthermore, the prosecutor's comments were made in response to the defense attorney's statement to the jury, "Please make sure that you decide these cases in the mitigation part, especially, and his Honor will charge you on the mitigation part, and in that charge he is going to tell you all the elements. . . .  There are eight or nine elements of mitigation. Under these circumstances, it cannot be said that the allegedly improper comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Hill*, 400 F.3d at 333; *cf. DePew v. Anderson*, 311 F.3d 742, 749-50 (6th Cir. 2002) (holding that prosecutor's inadmissible, inflammatory, and misleading comments during the penalty phase, which were designed to undercut the defendant's sole mitigation theory, effectively denied the defendant fair jury consideration of mitigating evidence in violation of his Eighth Amendment rights). In any event, because we are remanding for resentencing, the state court can easily apply the correct state standard. *Cf. Combs*, 205 F.3d at 291-93 (briefly discussing state trial court errors identified by state supreme court, including *DePew* issue, since the petitioner would in all probability be retried).

### 4. *Brady* Material

Poindexter also argues that the State failed to disclose Hurt's prior inconsistent statement to his attorneys, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The district court rejected this claim in part based upon its determination that, as an issue of fact, at least one of Poindexter's trial

attorneys reviewed the statement before trial.  Specifically, the district court noted that trial counsel Pandilidis testified by deposition in the federal proceedings that he thought he had seen the transcript of Hurt's statement previously.  The district court also held that co-counsel Perrino's testimony that he did not recall seeing the transcript of the recorded statement did not contradict Pandilidis's statement and was not evidence that the State failed to disclose it.

Under *Brady*, a defendant's due process rights are violated if the government suppresses evidence favorable to the accused "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87; *Armstrong v. Morgan*, 372 F.3d 778, 781 (6th Cir. 2004).  Evidence is material if there is a reasonable probability that had it been disclosed, "the result of the proceeding would have been different." *United States v. Bagley*, 473 F.3d 667, 682 (1985); *Armstrong*, 372 F.3d at 781.

"A *Brady* violation, however, only occurs if the prosecution failed to disclose the evidence to the defense." *Armstrong,* 372 F.3d at 781.  As the district court found, Poindexter has not established that the State failed to disclose the material.  Furthermore, the statement was not "material" in the sense that it created a reasonable probability of a different result.  As discussed *supra*, whether standing or kneeling, it is not disputed that Poindexter fired a shot at Hurt's head that was close enough to leave powder burns on his face.  In short, the district court's ruling was not in error.

## 5. Improper Jury Instructions

Poindexter complains that he was denied his Sixth Amendment right to trial by jury and his Fourteenth Amendment right to due process when the trial court improperly instructed the jury on statutory mitigating factors that he did not assert.  Poindexter cites *DePew* and *Combs* in support.

The Supreme Court has ruled that "the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Roe v. Baker*, 316 F.3d 557, 564 (6th Cir. 2002).  On habeas review, such errors are reviewable only if they deprived the petitioner of constitutional due process. *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000); *see also Baker*, 316 F.3d at 564.  Thus, "[t]he only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

The trial court's instructions listing all of Ohio's statutory mitigating factors was error under state law, as defined in *DePew,* and not federal constitutional law.  In any event, *DePew* itself did not find reversible error because the trial court merely stated the factors without commenting on those factors that were not presented by the appellant. *See DePew*, 528 N.E.2d at 558.  In this case, the trial court did not comment on factors not presented by Poindexter in mitigation, and expressly noted that "[t]he statute provides certain 'mitigating factors," *some of which may not apply to this hearing*." (emphasis added).

In short, Poindexter cannot meet the *Estelle* standard for establishing constitutional error on a claim that his jury instructions violated state law.  Although the state trial court read all the statutory mitigating factors of Ohio Rev. Code § 2929.04(B), it did not comment on the factors not presented by Poindexter and did not otherwise instruct the jury that the lack of evidence on a particular mitigating factor should be weighed against Poindexter.  Petitioner has not established a constitutional violation on this basis.

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** to the district court with instructions to issue a writ of habeas corpus vacating Poindexter's death sentence unless the state of Ohio conducts a new penalty proceeding within 180 days of remand.

---

**CONCURRENCE**

---

BOGGS, Chief Judge, concurring.  While I concur in Judge Suhrheinrich's opinion as an accurate statement of the current state of the law in our circuit, I write separately to note the continuing oddity of the circumstances in cases such as this.  To put it bluntly, it might well appear to a disinterested observer that the most incompetent and ineffective counsel that can be provided to a convicted and death-eligible defendant is a fully-investigated and competent penalty-phase defense under the precedents of the Supreme Court and of our court.  *Mills v. Maryland*, 486 U.S. 367, 375-84 (1988).  That is, the primary means by which a prisoner escapes the affirmance of a death sentence in this circuit has become a finding that "ineffective" counsel was provided at the penalty phase.  *See Harries v. Bell*, 417 F.3d 631, 637-39 (6th Cir. 2005); *Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004); *Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003), *cert. denied*, 541 U.S. 1095 (2004); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002); *Cone v. Bell*, 243 F.3d 961 (6th Cir. 2001), *rev'd and remanded by Bell v. Cone*, 535 U.S. 685 (2002); *Skaggs v. Parker*, 235 F.3d 261 (6th Cir. 2000), *cert. denied*, 534 U.S. 943 (2001); *Gall v. Parker*, 231 F.3d 265 (6th Cir. 2000), *cert. denied*, 533 U.S. 941 (2001) (suggesting that penalty phase faults might have been sufficient for habeas relief had guilt phase faults not been sufficient for relief); *Carter v. Bell*, 218 F.3d 581 (6th Cir. 2000); *Combs v. Coyle*, 205 F.3d 269 (6th Cir.), *cert. denied*, 531 U.S. 1035 (2000); *Austin v. Bell*, 126 F.3d 843 (6th Cir.), *cert. denied*, 523 U.S. 1088 (1998); *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995), *cert. denied*, 519 U.S. 910 (1996).  *See also Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003) (reversing district court's grant of habeas relief based on ineffective assistance of counsel during penalty phase); *Henderson v. Collins*, 262 F.3d 615 (6th Cir. 2001), *cert. denied*, 535 U.S. 1002 (2002) (same); *Abdur'Rahman v. Bell*, 226 F.3d 696 (6th Cir. 2000), *cert. denied*, 534 U.S. 970 (2001) (same); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000) (same).  Thus, if counsel provides fully-effective assistance, and the jury simply does not buy the defense, then the defendant is likely to be executed.  However, if counsel provides ineffective assistance, then the prisoner is likely to be spared, certainly for many years, and frequently forever.

And yet, in most cases, and including this one, the ineffectiveness consists in not making greater efforts to dig up and present material that, the courts speculate, would help rather than hurt the defendant.  *Frazier v. Huffman*, 343 F.3d at 794-99.  Indeed, our courts, have specifically held that there is no need to show that the evidence that might have been discovered would have been helpful – only that a proper judgment could not be made without the investigation when the failure to investigate is thought to be sufficiently serious.  *Mason v. Mitchell*, 320 F.3d at 619-27; *Carter v. Bell*, 218 F.3d 581, 600 (6th Cir. 2000); *Skaggs v. Parker*, 235 F.3d at 269-71; *Mapes v. Coyle*, 171 F.3d 408, 425-29 (6th Cir.), *cert. denied*, 528 U.S. 946 (1999).  *But see Coleman v. Mitchell*, 268 F.3d 417, 544-45 (6th Cir.), *cert. denied*, 534 U.S. 977 (2001).  *But see also Tyler v. Mitchell*, 416 F.3d 500 (6th Cir. 2005); *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000).  While no adequate empirical studies seem to have been made, it is just as easy to speculate that the type of "troubled childhood" evidence whose absence is usually faulted would be as damaging as it would be helpful.  *See generally,* Ursula Benetele & William J. Bowers, *How Jurors Decide on Death: Guilt is Overwhelming; Aggravation requires Death; and Mitigation is No Excuse*, 66 Brooklyn L. Rev. 1011 (2001); James M. Doyle, *Representation and Capital Punishment: The Lawyers' Art: "Representation" in Capital Cases*, 8 Yale J.L. & Human. 417 (1996); Paul Litton, *The "Abuse Excuse" in Capital Sentencing Trials*, 42 Am. Crim. L. Rev. 1027 (2005); Wayne A. Logan, *Through the Past Darkly: A Survey of the Uses and Abuses of Victim Impact Evidence in Capital Trials*, 41 Ariz. L. Rev. 143 (1999); Scott Sundby, *The Intersection of Trial Strategy, Remorse, and*

*the Death Penalty*, 83 Cornell L. Rev. 1557 (1998); Scott Sundby, *The Jury as Critic: An Empirical Look at how Capital Juries Perceive Expert and Lay Testimony*, 83 Va. L. Rev. 1109 (1997).

In fact, the usual speculation as to mitigating factors goes in two exactly opposite directions. Some would believe that a person's life should be spared if he had a troubled and violent childhood, which made it difficult to grow up to be the kind of citizen who does not murder people in the especially culpable ways necessary for a death sentence. On the other hand, it is exactly such evidence that might lead a jury to believe that the convict's life is particularly unworthy, is unlikely ever to improve, and thus he is unworthy of mercy. *See Moore v. Parker*, 425 F.3d 250, 254 (6th Cir. 2005). The strength of the opposite line of reasoning is shown by the fact that frequently, when such evidence is available, defense attorneys attempt to show that a person instead possesses considerable redeeming qualities, acquired talents, and turns of mind from a supportive and nurtured youth that makes his life more valuable and particularly worthy to be spared. I hold no brief for either side of this argument, either as a prospective juror myself, or as a prediction as to what jurors will in fact do. I lay this out only to indicate that it is wholly speculative to conclude that the presence of the type of evidence, whose absence ostensibly harms the petitioner, would in fact have spared him had it been presented to the jury.

And thus, we return to the "moral hazard" presented by our current jurisprudence. A somewhat prescient attorney, years ago, in the cases we are now seeing, might implicitly have reasoned (and any sensible attorney today, reading our cases, would have to be blind not to reason) as follows:

> If I make an all-out investigation, and analyze and present to the jury every possible mitigating circumstance, especially of the "troubled childhood" variety, it is my professional judgment that I may thereby increase the probability of this extremely repellant client escaping the death penalty from 10% to 12%. On the other hand, if I present reasonably available evidence that I think has as good a chance as any other in securing the slim chance of mercy from the jury, I will have a 50-99% chance of overturning the extremely likely death penalty judgment 10-15 years down the road. I will thus have secured many additional years of life for the client, and he may very likely avoid capital punishment altogether.

While I do not assert that the counsel in this or any other case made such a judgment, either consciously or unconsciously, I do note that our jurisprudence has made such a line of reasoning virtually inevitable for any defense attorney.[1]

However, as this seems to be, indeed, the state of the law, I concur.

---

[1] The candid reader can compare the text of this separate opinion with its characterization in another concurring opinion, and determine whether anything in it justifies that characterization. If a straightforward analysis of the consequences of legal doctrine leads to unpalatable conclusions, that is the result of the doctrine, not of those who explicate it. *See Grutter v. Bollinger*, 288 F.3d 732,796-97 n.21 (Boggs, J. dissenting).

---

## CONCURRENCE

---

SUHRHEINRICH, Circuit Judge, concurring.  Because my colleagues each have chosen to write a separate concurrence, I too write separately.  I agree with Judge Boggs.  I think Judge Boggs accurately points out the difficulties with the current legal doctrine concerning ineffective assistance of counsel in death penalty cases at the penalty phase.  I do not share Judge Daughtrey's views of defense counsel in these types of case as my experiences have been different. *See Thompson v. Bell*, 373 F.3d 688, 692-742 (6th Cir. 2004) (Suhrheinrich, J., concurring in part and dissenting in part), *rev'd*, 125 S. Ct. 2825 (2005); *In re Byrd*, 269 F.3d 544 (6th Cir. Sept. 10, 2001); *temporary stay allowed by*, 269 F.3d 578 (6th Cir. Sept. 14, 2001); *amended by* 269 F.3d 561 (6th Cir. Sept. 21, 2001); *remanded by*, 269 F.3d 585 (6th Cir. Oct. 9, 2001); *on remand In re Byrd*, 2001 WL 1512986 (S.D. Ohio Nov. 29, 2001); *see also In re Byrd*, 277 F.3d 804 (6th Cir. Jan 7, 2002).

---

**CONCURRENCE**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge, concurring. While I, too, concur in Judge Suhrheinrich's opinion, I write separately in order to express my dismay at Judge Boggs's unjustified attack directly on both the capital defense bar and indirectly on the members of this court. For the chief judge of a federal appellate court to state that it is "virtually inevitable" that "any mildly-sentient defense attorney" would consider playing the equivalent of Russian roulette with the life of a client is truly disturbing. Such a comment is an affront to the dedication of the women and men who struggle tirelessly to uphold their ethical duty to investigate fully and present professionally all viable defenses available to their clients. It also silently accuses the judges on this court of complicity in the alleged fraud by countenancing the tactics outlined.

The fact that Judge Boggs's sensibilities have been offended by a delay in the State of Ohio's rush to execution in order to ensure compliance with constitutional mandates is, I believe, less indicative of the existence a vast, diabolical, defense-bar conspiracy to derail our criminal justice system than it is consistent with the persistent problems plaguing the administration of capital punishment. If we are to continue to sanction imposition of the death penalty, we must be willing to guarantee a level of acceptable legal representation for capital defendants that will protect the interests of the accused, as the constitution demands. My experience over more than 30 years on the state and federal appellate benches leads me to the inescapable conclusion, contrary to Judge Boggs's intimations, *not* that capital defense attorneys are engaged in a demented, premeditated game of "gotcha" with the courts, but rather that those lawyers representing the absolute pariahs of society are frequently hamstrung by a critical lack of relevant experience, an obvious lack of time and resources, or both. If Judge Boggs truly wishes to bring finality to murder prosecutions in this circuit, I would invite him to spend less time denigrating the dedicated, but often overwhelmed, attorneys who have accepted the responsibility of representation in these very difficult cases, and more time working for improvement of the system.