RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0385p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KEVIN KEITH,

　　　　　　　*Petitioner-Appellant,*

　　　*v.*

BETTY MITCHELL, Warden,

　　　　　　　*Respondent-Appellee.*

No. 01-4266

>

Filed:  October 19, 2006

Before:  BOGGS, Chief Judge; CLAY and GIBBONS, Circuit Judges.

_____

**ORDER**

_____

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is denied.

1

CLAY, Circuit Judge, with whom MARTIN, MOORE and COLE, Circuit Judges, join, dissenting from the denial of rehearing en banc. Despite a long and well-recognized line of Supreme Court case law requiring counsel in death penalty cases to conduct at least a cursory investigation into mitigation evidence, it is uncontested in this case that defense counsel failed to conduct *any* investigation. Instead, defense counsel submitted reports containing information that any reasonable counsel would recognize could only prejudice a defendant, including: (1) victim impact information; (2) an extensive list of evidence implicating Petitioner; (3) a record of Petitioner's prior convictions; (4) erroneous positive statements about Petitioner's family and childhood; and (5) a psychiatrist's report stating that Petitioner was not mentally impaired and that no mitigating factors existed. It cannot be reasonably argued that submitting such information was a legitimate strategy simply because the report also mentioned that Petitioner was a good football player and considered himself to be a "nice guy." I would therefore grant the petition for rehearing and hold that Petitioner received ineffective assistance of counsel during the mitigation phase of his trial, requiring this Court to vacate his death sentence. Accordingly, I dissent from the denial of rehearing en banc.

## A.      Counsel's Conduct During the Mitigation Phase

The following facts regarding the performance of Petitioner's counsel during the mitigation phase are not disputed. Attorney James Banks, counsel for Petitioner, did not discuss the concept of mitigation with Petitioner. He did not question Petitioner about his life or childhood. He did not interview Petitioner's family or friends, despite their expressed willingness to speak with him. At the hearing, he presented no opening statement, witnesses or closing statement. He did not argue innocence, residual doubt, or even ask the jury to spare Petitioner's life. Furthermore, he allowed the submission of two highly prejudicial reports he had requested the court to prepare prior to the hearing.

The first report contained the results of a one-hour examination by psychologist Dr. William Schonberg. It noted, among other things, that Petitioner did not appear to have any mental illnesses, was of average intelligence, and was not currently depressed, or "down in the dumps." (Schonberg Rep. at 2.) It also recounted Petitioner's statements that he was a nice guy, had no anger problems, and did not have a significant substance abuse problem. Further, the report stated that Petitioner's family had no history of alcoholism, and that Petitioner was never physically or sexually abused. Finally, Dr. Schonberg concluded:

> Under the provisions of the Ohio Revised Code, Section 2929.04; Criteria for Imposing Death or Inprisonment [sic] for a Capital Offense, the death penalty will be precluded if the Court found any of three mitigating circumstances. [Petitioner] states that he is innocent of these charges. It would not appear that the offender acted under duress, nor would it appear that the victim of the offense induced or facilitated it. The offense would not appear to have been a product of the offender's mental deficiency or psychosis, the client having no psychiatric history. Therefore, based on interview impressions, it is this examiner's opinion that there are no mitigating factors in this case.

(Schonberg Rep. at 3.)

The second report was a pre-sentence report. It contained: (1) three pages recounting the crime and evidence against Petitioner; (2) a page long victim impact statement including information regarding the psychological state and monetary troubles of the surviving victims and their relatives; (3) a one sentence section labeled "Defendant's version" that included Petitioner's claim of innocence; (4) a one page history of Petitioner's prior record; (5) a two page summary of Petitioner's parole and supervised release history; and (6) a one page social history of Petitioner. The social history stated that Petitioner was an illegitimate child who was raised by his grandparents and had

a happy and normal childhood. It also stated that Petitioner maintained employment and had a daughter for whom he paid $25 dollars per week in child support.

After the jury recommended sentencing Petitioner to death, Petitioner's post-conviction counsel uncovered relevant mitigating evidence. Post-conviction counsel submitted affidavits indicating that Petitioner's mother was an alcoholic who drank during her pregnancies, that Social Services had determined that Petitioner's mother neglected him and had placed him with his grandparents, that Petitioner's grandfather had abused at least one of Petitioner's half-siblings and probably had abused the other children, presumably including Petitioner, and that Petitioner's custodial grandmother was a convicted murderer. Additionally, counsel submitted an affidavit from Dr. Jeffrey L. Smalldon stating that Dr. Schonberg's report was inadequate and unprofessional. In particular, Dr. Smalldon criticized Dr. Schonberg's willingness to accept Petitioner's statements about his life at face value and draw such broad conclusions from an hour long interview. Among other things, Dr. Smalldon described the professional standards for mental health professionals as emphasizing the need for the clinician to conduct a very wide-ranging and thorough clinical examination, as well as an exhaustive search for relevant information from the individual's psychological and social history. Further, Dr. Smalldon opined that Petitioner may suffer from a mild brain impairment. Unfortunately, post-conviction counsel was not able to fully develop this evidence due to the post-conviction trial court's refusal to allow a hearing.

## B. The Ohio Courts' Treatment of Counsel's Conduct

Despite the conduct of counsel and evidence suggesting that Petitioner's childhood was not as "happy and normal" as reported in the pre-sentence report, at 8, all of the Ohio courts determined that counsel's decision to forgo the presentation of mitigation evidence was "strategic," or declined to reach the issue. *See State v. Keith*, 684 N.E.2d 47, 67 (Ohio 1997); *State v. Keith*, No. 3-98-05, 1998 WL 487044, *7 (Ohio App. 3 Dist. August 19, 1998); *State v. Keith*, No. 3-94-13, 1996 WL 156710, *23 (Ohio App. 3 Dist. April 5, 1996); *State v. Keith*, No. 94-CR-0042 (Common Pleas Ct. of Crawford County Ohio Feb. 4, 1998). They reasoned that mitigation evidence was inconsistent with Petitioner's claim of innocence at trial. Additionally, the Ohio Court of Appeals held that the evidence submitted in affidavit form by post-conviction counsel was merely duplicative of evidence contained in both Dr. Schonberg's report and the pre-sentence report. Thus, they held that counsel's failure to present mitigation evidence did not prejudice Petitioner.

## C. Standard of Review

As noted in the panel opinion, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this Court's review of the state court holding in this case. Under AEDPA, this Court may only reverse a state court holding if the holding was: "(1) contrary to or an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under § 2254(d)(1) a state court decision is contrary to a clearly established Federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law, or if the if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 360, 413 (2000). A state court decision is an unreasonable application of clearly established Federal law if "the state court identifies the correct governing legal principle but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

**D.      Clearly Established Law on Ineffective Assistance of Counsel**

The Supreme Court first articulated the now familiar two part test for determining whether counsel is ineffective in *Strickland v. Washington*, 466 U.S. 668 (1984), and "[i]t is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 390. Under *Strickland*, a defendant seeking to establish that his counsel's assistance was ineffective must show: (1) that his counsel's performance was deficient, in other words, that it "fell below an objective standard of reasonableness;" and (2) that the defense was prejudiced by the attorney's deficient performance. *Strickland*, 466 U.S. at 687-88. In establishing prejudice, a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case," but only, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

In *Strickland*, the Court dealt specifically with a claim that counsel's failure to investigate and present mitigation evidence constituted deficient performance. *Strickland*, 466 U.S. at 699. The Court explained that while strategic choices made after a through investigation "are virtually unchallengeable; . . . strategic choices made after a less than complete investigation are reasonably precise to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary." *Id.* at 690-91. Thus it follows that any decision to forgo mitigation evidence is unreasonable unless made after a reasonable decision not to investigate further. *See id.*

The Supreme Court has now applied *Strickland* in the AEDPA context at least three times to hold that a defense attorney's failure to adequately investigate and present mitigating evidence at the sentencing phase of a death penalty trial constitutes ineffective assistance of counsel. *See Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams*, 529 U.S. at 390. In those cases, the Court has reiterated that trial counsel has an "obligation to conduct a thorough investigation of the defendant's background" in death penalty cases. *Wiggins*, 539 U.S. at 522, 524 (citing ABA guidelines advising attorneys to conduct thorough investigations); *Williams*, 529 U.S. at 396. In this context, the Court has warned against a tendency to invoke "strategy" as a "*post-hoc* rationalization of counsel's conduct [rather] than an accurate description of their deliberations prior to sentencing" to explain counsel's decisions. *Wiggins*, 539 U.S. at 527.

**E.      The Ohio Courts' Decisions Were Contrary to and an Unreasonable Application of Clearly Established Federal Law**

The Ohio courts' denial of Petitioner's ineffective assistance of counsel claim was both contrary to and an unreasonable application of clearly established Federal law as articulated by the Supreme Court in *Strickland*. Under *Strickland*, counsel's failure to present any mitigation evidence without first conducting an investigation is considered deficient performance. 466 U.S. at 691; *see Wiggins*, 539 U.S. at 523. Thus, the Ohio courts' holding that Petitioner's counsel made a strategic decision not to present mitigation evidence despite his unreasonable failure to conduct any investigation is contrary to *Strickland*. Similarly, the Ohio courts' determination that counsel's submission of the presentence report and Dr. Schoenberg's evaluation was reasonable trial strategy constituted an unreasonable application of *Strickland*. Because the overwhelming majority of the reports contained information that was prejudicial to Petitioner as opposed to beneficial, counsel's decision fell below an objective standard of reasonableness as evidenced by prevailing professional norms. Together, these errors prejudiced Petitioner because there is a reasonable probability that but for the errors one juror might have decided to sentence Petitioner to life, not death.

## 1.      Counsel's Errors

### a.      Failure to Investigate or Present Mitigation Evidence

Counsel's complete and utter failure to investigate before deciding not to present mitigating evidence at sentencing is deficient performance as a matter of law under Supreme Court case law, and thus, the Ohio courts' determination that counsel did not err is contrary to Federal law as articulated in *Strickland.* *Wiggins*, 539 U.S. at 523; *Strickland,* 466 U.S. at 691. The Ohio courts all determined that counsel's failure to present mitigation evidence was strategic. They reasoned that presenting mitigation evidence was incompatible with a claim of innocence. Putting aside the untenable proposition that mitigation and innocence are inconsistent, the Ohio courts' reasoning must be rejected because counsel's strategic decision not to present mitigation evidence is only protected under *Strickland* to the extent the decision followed a reasonable investigation. *Wiggins*, 539 U.S. at 523; *Strickland,* 466 U.S. at 691. It is uncontested in this case that Mr. Banks conducted absolutely no investigation. Therefore, his decision not to present mitigation evidence constituted deficient performance. *Wiggins*, 539 U.S. at 523; *Strickland,* 466 U.S. at 691.

### b.      Submission of Psychological and Pre-Sentence Reports

Counsel's decision to submit the psychological and pre-sentence reports fell far below the standard of attorney conduct articulated in *Strickland*: "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. Thus, the Ohio court's holding to the contrary constitutes an unreasonable application of *Strickland*.

According to ABA guidelines, counsel in death penalty cases have an obligation to consider the strategic implications of requesting a pre-sentence report where such reports are optional. ABA Guidelines, Death Penalty Cases, Guideline 10.12(A)(1); *Strickland*, 466 U.S. at 688 (stating that ABA standards are guides to prevailing professional norms); *see also Wiggins*, 539 U.S. at 524. The commentary following Guideline 10.12 expressly notes that requesting such a report in Ohio may amount to ineffective assistance of counsel because it allows the prosecution to present a defendant's prior record and victim impact evidence, where such information would otherwise be inadmissible. ABA Guideline 10.12 and accompanying commentary; Ohio Rev. Code § 2929.03(D) (stating that only a defendant may request reports). Additionally, Guideline 10.12 states that "counsel should . . . provide to the report preparer information favorable to the client [and] . . . take appropriate steps to ensure that improper, incorrect or misleading information that may harm the client is deleted from the report."

In this case, Mr. Banks' conduct fell well below the standards set forth in ABA Guideline 10.12. In the first place, considering the information contained in the reports, it is highly unlikely that Mr. Banks considered the strategic implications of placing the reports before the jury. No reasonable defense attorney could actually read these reports and determine that there was anything to be gained by submitting them as evidence at the mitigation stage. As discussed above, the reports contained *pages* documenting Petitioner's prior record, impact of the crime on the victims and their families, evidence implicating Petitioner, erroneous statements about Petitioner's background and childhood, and a psychologist's conclusion that no mitigating factors existed. In contrast, the report contained *one sentence* on Petitioner's version of the events. Additionally, Dr. Schonberg's report stated that Petitioner was not depressed, which a jury could easily interpret as evidence of lack of remorse. Finally, Dr. Schonberg also made the outrageous statement that no mitigating factors existed. This is exactly what the jury, not Dr. Schonberg, was convened to determine. No reasonable attorney could conclude that the mitigating value of the report outweighed the introduction of the prejudicial evidence simply because the report also contained a handful of positive sentences about Petitioner.

The Ohio courts' determination to the contrary is an unreasonable application of *Strickland.* The Ohio courts found that the decision of counsel to submit the reports was "strategic." *Strickland,* however, warns courts not to accept *post-hoc* rationalizations for counsel's conduct. The Ohio courts' justification of counsel's conduct is just such a rationalization. There is absolutely no support in the record evidencing that Mr. Banks considered the implications of submitting the reports. Moreover, as explained above, counsel's decision, to the extent it was even a conscious decision, was not a reasonable strategy.

Next, there is no evidence that Mr. Banks made any effort to provide favorable information to the probation officer who prepared the pre-sentence report. As will be discussed more thoroughly in the section below on prejudice, post-conviction counsel discovered relevant mitigation evidence that should have been presented at trial. Mr. Banks failed to have this information included in the pre-sentence report. Thus, the jury never heard the evidence.

Finally, Mr. Banks made no effort to insure that the information contained in the reports was accurate. Again, as will be discussed below, the reports submitted to the jury contained information that conflicted with information discovered by the post-conviction counsel. Because of counsel's failure to correct the erroneous information, the jury received inaccurate and prejudicial information about Petitioner's life.

### 2. Prejudice

Counsel's failure to present mitigating evidence and his submission of the psychological and pre-sentence reports prejudiced Petitioner. To demonstrate prejudice under *Strickland,* Petitioner must show that but for counsel's errors there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 694. Under Ohio law, a jury verdict sentencing a defendant to death must be unanimous. *State v. Robb,* 723 N.E.2d 1019, 1044 (Ohio 2000). Thus, to demonstrate prejudice in this case, Petitioner need only show that but for counsel's errors, *there is a reasonable probability that one juror would have voted differently.*

Here, there is a reasonable probability that one juror would have spared Petitioner's life if the jury had not received Petitioner's prior record or the victim impact evidence contained in the reports and instead received mitigation evidence. Under Ohio law, neither a defendant's prior record nor victim impact evidence is admissible to prove aggravation. *See* Ohio Rev. Code § 2929.04; *State v. Jackson,* 751 N.E.2d 946, 957 (Ohio 2001) (limiting aggravating factors to statutory aggravating factors that have been charged and proved beyond a reasonable doubt). Thus, but for counsel's submission of the reports, the jury would not have had access to Petitioner's record of the victims' trauma. *See* ABA Guideline 10.12 and accompanying commentary. Furthermore, the jury clearly considered Petitioner's prior record in its deliberations. The jury's prejudicial consideration of Petitioner's prior record is evidenced by a question the jury submitted to the court during its sentencing deliberations. The jury asked the court to verify the dates of Petitioner's imprisonment for a prior robbery. Petitioner's prior record very clearly affected the jury's deliberations, and thus, there is a reasonable probability that but for counsel's submission of the reports, one juror would have voted to recommend sentencing Petitioner to life imprisonment instead of death.

Had defense counsel acted as competent counsel, the jury would have heard mitigating evidence concerning Petitioner in place of the victim impact evidence and Petitioner's prior record. The jury would have known and been able to consider the information obtained by post-conviction counsel, namely, that Petitioner's mother was an alcoholic who drank during her pregnancies; that Social Services determined that Petitioner's mother neglected him and placed him with his grandparents; that Petitioner's grandfather abused at least one of Petitioner's half-siblings and

probably abused the other children, presumably including Petitioner;[1] and that Petitioner's custodial grandmother was a convicted murderer. *See Rompilla*, 545 U.S. at 390-91 (finding prejudice where evidence that Petitioner was abused and that his mother was an alcoholic was not presented at the mitigation hearing).

The panel's assertion that the mitigation evidence duplicated information already submitted to the jury through the reports is simply incorrect. First, Dr. Schonberg's report states that Petitioner's family had no history of alcoholism. In fact, Petitioner's mother admits that she was an alcoholic who drank while she was pregnant. Additionally, there is substantial evidence of drug abuse in Petitioner's family. Second, the reports do not state that Ohio Social Services found that Petitioner's mother was not fit to care for him. Instead, the pre-sentence report states, "[Petitioner] was raised by his grandfather . . . due to the fact that his mother was too young." This statement implies that Petitioner's mother voluntarily relinquished him to her parents and not that Social Services had to come and take him away.[2] Finally, Dr. Schonberg's report states that Petitioner was not abused. While it is not clearly established that Petitioner was abused, there is evidence suggesting abuse. This evidence could have been further developed if the post-conviction trial court had allowed post-conviction counsel to present evidence at a hearing.

In light of defense counsel's submission of extremely prejudicial evidence and defense counsel's failure to submit mitigation evidence, there is more than *a reasonable probability* that but for counsel's errors *one juror* would have chosen to sentence Petitioner to life and not death. Accordingly, I would grant the petition for rehearing and vacate Petitioner's sentence of death.

---

[1] Although Petitioner informed Dr. Schonberg that he was not abused, Dr. Smalldon states in his affidavit that Dr. Schonberg's conclusions are not warranted in light of his brief meeting with Petitioner and because it was unprofessional to take what Petitioner said at face value.

[2] Additionally, it seems that the mitigation expert hired by post-conviction counsel was unable to obtain the Social Services file because there was no court order releasing it. It is unclear if post-conviction counsel requested a court order but the post-conviction trial court was clearly not interested in developing a factual record.

BOYCE F. MARTIN, JR., Circuit Judge, dissenting. I join Judge Clay's persuasive and thorough dissent from the denial of Kevin Keith's petition for rehearing en banc regarding the rejection of his habeas corpus petition. I write separately to express again my dismay and frustration with the shortcomings of our approach to reviewing death sentences through habeas corpus appeals. Needless to say, if each of the states where the death penalty is a punishment were to provide adequate counsel and adequate resources at the initial trial and sentencing stages, most of these cases would be disposed of in a fashion that would allow the process to move more swiftly and fairly. Regrettably, such is not the case.

I am reminded of Justice Blackmun's comments regarding the consistent shortcomings in legal representation provided to capital defendants:

> Our system of justice is adversarial and depends for its legitimacy on the fair and adequate representation of all parties at all levels of the judicial process. The trial is the main event in this system, where the prosecution and the defense do battle to reach a presumptively reliable result. When we execute a capital defendant in this country, we rely on the belief that the individual was guilty, and was convicted and sentenced after a fair trial, to justify the imposition of state-sponsored killing. And when this Court curtails federal oversight of state court proceedings, it does so in reliance on the proposition that justice has been done at the trial level. My 24 years of overseeing the imposition of the death penalty from this Court have left me in grave doubt whether this reliance is justified and whether the constitutional requirement of competent legal counsel for capital defendants is being fulfilled.

*McFarland v. Scott*, 512 U.S. 1256, 1264 (1994) (Blackmun, J., dissenting from denial of certiorari). Sadly, I believe that in the twelve years that have elapsed since these observations were made, the representation typically provided in capital trials has done little to ameliorate Justice Blackmun's concerns about "whether the constitutional requirement of competent legal counsel for capital defendants is being fulfilled." *Id.* Nor do I believe that we as a nation, or as a federal judiciary, have had "the courage to recognize the failings of our present system of capital representation and the conviction to do what is necessary to improve it." *Id.* As Judge Clay ably explains here, the representation Keith received in his capital sentencing left much to be desired, because his counsel entirely failed to investigate or present mitigating evidence. Consequently, any "reliance on the proposition that justice has been done at the trial level" is entirely misplaced.

The majority's willingness to take the opposite approach here, and to make light of the prejudice imposed upon Keith at sentencing, show nothing less than indifference toward a criminal defendant's right to effective assistance of counsel in a capital sentencing proceeding. Indeed, members of this Court have gone on the record to second-guess the jurisprudence of the Supreme Court, and this Court, that requires counsel to conduct an adequate investigation of potential mitigating circumstances for purposes of capital sentencing, and mandates the reversal of convictions where this does not occur. *See Poindexter v. Mitchell*, 454 F.3d 564, 588 (6th Cir. 2006) (Boggs, J., concurring) (speculating that the Sixth Amendment jurisprudence of this Court and the Supreme Court creates a "moral hazard" by encouraging intentional ineffective assistance of counsel); *Id.* at 589 (Suhrheinrich, J., concurring) ("I agree with Judge Boggs."). This reasoning strikes me as demonstrating callousness and possible animosity toward the Sixth Amendment right to counsel. It is difficult to believe that Judge Boggs's opposition to this Sixth Amendment requirement, as articulated in his *Poindexter* concurrence, has not influenced the result here.

Additionally, I also believe that it is simply incorrect, and contravenes common sense, to suggest that the protection of the Sixth Amendment right to counsel by the federal judiciary has somehow created incentive for defense counsel to intentionally fail to provide adequate representation during capital sentencing proceedings. The proposition that a trial lawyer would ever

intentionally lose at trial or sentencing in the hopes that his client will have the resulting conviction reversed on appeal would seem incredible to an attorney with any experience at the trial level, and is indicative of the tendency of appellate judges to be oblivious to the real world of litigation strategy. It would be particularly poor judgment for defense counsel in a state criminal trial to leave the protection of her client's Sixth Amendment rights in the hands of a federal judiciary that has become increasingly willing to play fast and loose with the individual protections guaranteed by the Constitution merely to avoid temporarily delaying a state's rush toward death.[1] Instead, the deference that is shown to strategic decisions by defense counsel and the legal decisions of state courts significantly limits such scrutiny by federal appellate courts — justifiably in general, but in some instances to too great an extent.

It seems to me that the better explanation for the frequent findings of ineffectiveness of counsel in capital cases that Judge Boggs documents has nothing to do with intentionally deficient representation, and much more to do with the fact that there is insufficient support, financial and otherwise, for attorneys representing capital defendants. *See also Poindexter*, 454 F.3d at 590 (Daughtrey, J., concurring) (concluding "contrary to Judge Boggs's intimations, *not* that capital defense attorneys are engaged in a demented, premeditated game of 'gotcha' with the courts, but rather that those lawyers representing the absolute pariahs of society are frequently hamstrung by a critical lack of relevant experience, an obvious lack of time and resources, or both.") (emphasis in original). For this reason, I share Justice Blackmun's concern that "[w]ithout question, 'the principal failings of the capital punishment review process today are the inadequacy and inadequate compensation of counsel at trial." *McFarland*, 512 U.S. at 1256 (quoting Ira Robbins, *Toward a More Just and Effective System of Review in State Death Penalty Cases*, *Report of the American Bar Association's Recommendations Concerning Death Penalty Habeas Corpus*, 40 AM. U. L. REV. 1, 16 (1990)). Until our society is willing to provide rigorous support for appointed defense counsel — or to abolish the death penalty — the shortcomings in representation in capital cases will likely continue. In the meantime, the insufficient resources provided to indigent defense counsel combined with the reluctance of the federal courts to provide meaningful review of state court death sentences will continue to do a great disservice to the Sixth Amendment right to counsel in capital cases.

So long as the attempt to constitutionally impose capital punishment is continued, "we must have the courage to recognize the current failings of our present system of capital representation and the conviction to do what is necessary to improve it." *Id*. In light of this warning, I believe that instead of following the majority's overly-deferential approach, the Sixth Amendment requires us to maintain adequate scrutiny of death sentences in cases such as this, where any confidence we might have in the reliability of the outcome is entirely undermined by the possibility that mitigating evidence was never brought to light. As Judge Clay has demonstrated, the Sixth Amendment requires reversal in this case, given trial counsel's complete failure to investigate and to present mitigating evidence at sentencing, and the likelihood that this shortcoming prejudiced Keith. I dissent.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green
_____
Clerk

---

[1] *See Herrera v. Collins*, 506 U.S. 390, 446 (1993) (Blackmun, J., dissenting) ("I have voiced disappointment over this Court's obvious eagerness to do away with any restriction on the States' power to execute whomever and however they please.").