BOYCE F. MARTIN, JR., Circuit Judge,
dissenting.
I join Judge Clay’s persuasive and thorough dissent from the denial of Kevin Keith’s petition for rehearing en banc regarding the rejection of his habeas corpus petition. I write separately to express again my dismay and frustration with the shortcomings of our approach to reviewing death sentences through habeas corpus appeals. Needless to say, if each of the states where the death penalty is a punishment were to provide adequate counsel and adequate resources at the initial trial and sentencing stages, most of these cases would be disposed of in a fashion that would allow the process to move more swiftly and fairly. Regrettably, such is not the case.
I am reminded of Justice Blackmun’s comments regarding the consistent shortcomings in legal representation provided to capital defendants:
Our system of justice is adversarial and depends for its legitimacy on the fair and adequate representation of all parties at all levels of the judicial process. The trial is the main event in this system, where the prosecution and the defense do battle to reach a presumptively reliable result. When we execute a capital defendant in this country, we rely on the belief that the individual was guilty, and was convicted and sentenced after a fair trial, to justify the imposition of state-sponsored killing. And when this Court curtails federal oversight of state court proceedings, it does so in reliance on the proposition that justice has been done at the trial level. My 24 years of overseeing the imposition of the death penalty from this Court have left me in grave doubt whether this reliance is justified and whether the constitutional requirement of competent legal counsel for capital defendants is being fulfilled.
McFarland v. Scott, 512 U.S. 1256, 1264, 114 S.Ct. 2785, 129 L.Ed.2d 896 (1994) (Blackmun, J., dissenting from denial of certiorari). Sadly, I believe that in the *548 twelve years that have elapsed since these observations were made, the representation typically provided in capital trials has done little to ameliorate Justice Black-mun’s concerns about “whether the constitutional requirement of competent legal counsel for capital defendants is being fulfilled.” Id. Nor do I believe that we as a nation, or as a federal judiciary, have had “the courage to recognize the failings of our present system of capital representation and the conviction to do what is necessary to improve it.” Id. As Judge Clay ably explains here, the representation Keith received in his capital sentencing left much to be desired, because his counsel entirely failed to investigate or present mitigating evidence. Consequently, any “reliance on the proposition that justice has been done at the trial level” is entirely misplaced.
The majority’s willingness to take the opposite approach here, and to make light of the prejudice imposed upon Keith at sentencing, show nothing less than indifference toward a criminal defendant’s right to effective assistance of counsel in a capital sentencing proceeding. Indeed, members of this Court have gone on the record to second-guess the jurisprudence of the Supreme Court, and this Court, that requires counsel to conduct an adequate investigation of potential mitigating circumstances for purposes of capital sentencing, and mandates the reversal of convictions where this does not occur. See Poindexter v. Mitchell, 454 F.3d 564, 588 (6th Cir.2006) (Boggs, J., concurring) (speculating that the Sixth Amendment jurisprudence of this Court and the Supreme Court creates a “moral hazard” by encouraging intentional ineffective assistance of counsel); Id. at 589 (Suhrheinrieh, J., concurring) (“I agree with Judge Boggs.”). This reasoning strikes me as demonstrating callousness and possible animosity toward the Sixth Amendment right to counsel. It is difficult to believe that Judge Boggs’s opposition to this Sixth Amendment requirement, as articulated in his Poindexter concurrence, has not influenced the result here.
Additionally, I also believe that it is simply incorrect, and contravenes common sense, to suggest that the protection of the Sixth Amendment right to counsel by the federal judiciary has somehow created incentive for defense counsel to intentionally fail to provide adequate representation during capital sentencing proceedings. The proposition that a trial lawyer would ever intentionally lose at trial or sentencing in the hopes that his client will have the resulting conviction reversed on appeal would seem incredible to an attorney with any experience at the trial level, and is indicative of the tendency of appellate judges to be oblivious to the real world of litigation strategy. It would be particularly poor judgment for defense counsel in a state criminal trial to leave the protection of her client’s Sixth Amendment rights in the hands of a federal judiciary that has become increasingly willing to play fast and loose with the individual protections guaranteed by the Constitution merely to avoid temporarily delaying a state’s rush toward death.[1] Instead, the deference that is shown to strategic decisions by defense counsel and the legal decisions of state courts significantly limits such scrutiny by federal appellate courts — justifiably in general, but in some instances to too great an extent.
*549 It seems to me that the better explanation for the frequent findings of ineffectiveness of counsel in capital cases that Judge Boggs documents has nothing to do with intentionally deficient representation, and much more to do with the fact that there is insufficient support, financial and otherwise, for attorneys representing capital defendants. See also Poindexter, 454 F.3d at 590 (Daughtrey, J., concurring) (concluding “contrary to Judge Boggs’s intimations, not that capital defense attorneys are engaged in a demented, premeditated game of ‘gotcha’ with the courts, but rather that those lawyers representing the absolute pariahs of society are frequently hamstrung by a critical lack of relevant experience, an obvious lack of time and resources, or both.”) (emphasis in original). For this reason, I share Justice Black-mun’s concern that “[w]ithout question, ‘the principal failings of the capital punishment review process today are the inadequacy and inadequate compensation of counsel at trial.” McFarland, 512 U.S. at 1256, 114 S.Ct. 2785 (quoting Ira Robbins, Toward a More Just and Effective System of Review in State Death Penalty Cases, Report of the American Bar Association’s Recommendations Concerning Death Penalty Habeas Corpus, 40 Am. U.L. Rev. 1,16 (1990)). Until our society is willing to provide rigorous support for appointed defense counsel — or to abolish the death penalty — the shortcomings in representation in capital cases will likely continue. In the meantime, the insufficient resources provided to indigent defense counsel combined with the reluctance of the federal courts to provide meaningful review of state court death sentences will continue to do a great disservice to the Sixth Amendment right to counsel in capital cases.
So long as the attempt to constitutionally impose capital punishment is continued, “we must have the courage to recognize the current failings of our present system of capital representation and the conviction to do what is necessary to improve it.” Id. In light of this warning, I believe that instead of following the majority’s overly-deferential approach, the Sixth Amendment requires us to maintain adequate scrutiny of death sentences in cases such as this, where any confidence we might have in the reliability of the outcome is entirely undermined by the possibility that mitigating evidence was never brought to light. As Judge Clay has demonstrated, the Sixth Amendment requires reversal in this case, given trial counsel’s complete failure to investigate and to present mitigating evidence at sentencing, and the likelihood that this shortcoming prejudiced Keith. I dissent.

. See Herrera v. Collins, 506 U.S. 390, 446, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (Black-mun, X, dissenting) ("I have voiced disappointment over this Court’s obvious eagerness to do away with any restriction on the States' power to execute whomever and however they please.”).